[Cite as *State v. Smith*, 2018-Ohio-1937.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 17AP-649 |
| v. | : | (C.P.C. No. 16CR-2007) |
| Anthony Smith, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 17, 2018

**On brief:** *Ron O'Brien,* Prosecuting Attorney, and *Seth L. Gilbert,* for appellee.

**On brief:** *Wolfe Law Group, LLC,* and *Stephen T. Wolfe,* for appellant.

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Defendant-appellant, Anthony Smith, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of aggravated burglary, rape, and kidnapping. At the request of the state, we modify the judgment of the trial court to reflect consecutive sentences of 10 years each for appellant's convictions for aggravated burglary and rape, resulting in a total sentence of 20 years, to run consecutive to prior sentences for convictions in Michigan and Cuyahoga County, Ohio, as stated in the trial court's judgment entry. In all other respects, we affirm the judgment of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On April 13, 2016, appellant was indicted on one count each of aggravated burglary, rape, and kidnapping. On August 7, 2017, the case proceeded to a jury trial. As relevant to this appeal, the following evidence was presented.

{¶ 3}  On July 20, 1996, the victim, J.W., was alone at home with her two-year old daughter. J.W. and her daughter were sleeping in the same bed when J.W. was awoken by a man sitting on the side of the bed. J.W. had never seen this man before and he had not been invited into the home.  J.W. observed the man for about ten seconds before he shoved a T-shirt into her mouth to muffle her screaming. The T-shirt also covered J.W.'s face. J.W.'s daughter started to wake up and the man asked J.W. to hug him so that the daughter would not be alarmed. J.W. did so, but only because the man kept reaching beside the bed for what he said was a gun. J.W. did not actually see a gun.

{¶ 4}  The man told J.W. to take her daughter to another room, and J.W. testified that when she returned the man "proceeded to rape me." (Tr. at 95-96.) Asked to clarify what she meant by "raped," J.W. stated that the man had "sex without [her] permission." (Tr. at 96.) J.W. indicated to the man that she "did not want this to happen." (Tr. at 98.) At some point, the T-shirt was removed from her mouth and face.  J.W. asked the man not to kill her, and he responded that "he doesn't kill, he rapes." (Tr. at 97.) The man did not wear a condom and ejaculated inside her. He then put a shirt over J.W.'s face, told her he did not want her to see him, and left.  J.W. called the police.

{¶ 5}  The police soon arrived at the scene and determined that the man entered the home by climbing up a board to a first floor window and then cutting the screen. J.W. told the police responders that she could not identify or describe the man. The investigating detective testified that victims of traumatic events often take time for their memory to come into focus.

{¶ 6}  J.W. was taken to the hospital to have a rape kit performed. At the hospital, J.W. described the man as a "[m]ale black, 20 to 23 years of age, 5'9", approximately 175 pounds, black hair, brown eyes wearing a dark green shirt and blue jean shorts." (Tr. at 25.) Police would later ask J.W. to see a sketch artist, but J.W. did not follow up with police regarding the investigation because the father of her daughter told her that he had the man killed, apparently to give J.W. some peace of mind, so J.W. assumed the man was already dead.

{¶ 7}  Meanwhile, lab analysis showed that sperm was present on the vaginal swab from the rape kit and also on J.W.'s bed sheets. Because the police had no profile to compare the DNA against, the case went inactive. In 2002, DNA from the rape kit was re-tested and

entered into a database and, in 2013 or 2014, a match was discovered between the DNA and appellant. Police located J.W. and showed her a photo array containing a 1996 BMV photo of appellant, and J.W. identified him from the array. Updated DNA samples were collected from J.W. and appellant. Confirmation testing was performed and the DNA from the vaginal swab matched the updated sample taken from appellant.

{¶ 8} At the trial, appellant moved for acquittal pursuant to Crim.R. 29. The trial court denied the motion. The jury found appellant guilty on all counts, and the trial court—after merging the kidnapping count into the rape count—sentenced appellant to 11 years on both the aggravated burglary and rape counts, to be served consecutively to each other and consecutively to sentences previously imposed in 2 other cases, one from Michigan and the other from Cuyahoga County, and declared appellant a sexual predator. (Jgmt. Entry at 1-2.)

## II. ASSIGNMENTS OF ERROR

{¶ 9} Appellant appeals and assigns the following errors:

> [I.] THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS.
>
> [II.] THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29.
>
> [III.] THE JURY'S VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## III. DISCUSSION

{¶ 10} All of appellant's assignments of error are interrelated. As such, we will first address assignment of error three, the manifest weight of the evidence argument, as resolution of this argument is dispositive of appellant's assignments of error.

{¶ 11} Appellant argues that J.W.'s testimony is not sufficient proof of either a trespass or lack of consent and is against the manifest weight of the evidence. Appellant argues that the jury gave improper weight to J.W.'s testimony, that J.W.'s testimony was unreliable, and thus the jury's decisions were improper. As such, appellant argues that it is clear that the jury lost its way and the convictions must be reversed to prevent a manifest miscarriage of justice. Appellant's assignments of error lack merit.

{¶ 12} This court in *State v. Baatin*, 10th Dist. No. 11AP-286, 2011-Ohio-6294, ¶ 8-11, stated the applicable law:

> Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 11 * * * Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. *Id.* * * *
>
> The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, * * *.
>
> When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* at 387. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*; *State v. Strider-Williams*, 10th Dist. No. 10AP-334, 2010-Ohio-6179, ¶ 12.
>
> In addressing a manifest weight of the evidence argument, we are able to consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, in conducting our review, we are guided by the presumption that the jury * * * " 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.* * * * Accordingly, we afford great deference to the jury's determination of witness credibility.

{¶ 13} Our review of the entire record shows that the weight of the evidence supported appellant's conviction for rape. J.W. testified that she was awakened by a then unidentified man sitting on her bed. The man put a T-shirt in J.W.'s mouth to muffle her

screaming. The man indicated to J.W. that he had a gun, engaged in non-consensual sexual conduct with J.W., and indicated he was a rapist, not a killer. DNA taken from the vaginal swab from J.W.'s rape kit matched appellant's DNA, and J.W. later identified him from a photo array. A reasonable fact finder could find that appellant engaged in sexual conduct with J.W. and that he purposely compelled J.W. to submit by force or threat of force in violation of R.C. 2907.02(A)(2).

{¶ 14} The weight of the evidence was also sufficient to find appellant guilty of aggravated burglary. J.W. testified that appellant was not invited in her home, and responding officers determined that entry into the home was achieved by cutting open a screen of a first floor window. A reasonable fact finder could conclude that appellant trespassed in an occupied structure with the purpose to commit a criminal offense and that he inflicted physical harm on J.W., in violation of R.C. 2911.11(A)(1). Finally, the weight of the evidence was sufficient to find appellant guilty of kidnapping, in that he restrained J.W.'s liberty for the purpose of engaging in sexual activity against J.W.'s will, in violation of R.C. 2905 .01(A)(4).

{¶ 15} This case came down to credibility. The jury clearly believed J.W.'s testimony. Her testimony, along with the DNA evidence, supported appellant's convictions. Our review shows that the jury did not clearly lose its way when it found the state's evidence persuasive, and did not create a manifest miscarriage of justice. The jury was in the best position to evaluate the witnesses' credibility and the evidence does not weigh heavily against conviction. Appellant presents no persuasive reason for this court to reject the jury's determination. Accordingly, appellant's convictions are not against the manifest weight of the evidence. Appellant's third assignment of error challenging the manifest weight of the evidence lacks merit and is overruled.

{¶ 16} As stated above, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 11. Therefore, appellant's first assignment of error challenging the sufficiency of the evidence is overruled.

{¶ 17} "Because analysis of the evidence for purposes of a Crim.R. 29(A) motion looks at the sufficiency of the evidence, a Crim.R. 29(A) motion and a review of the sufficiency of the evidence are subject to the same analysis." *State v. Clellan*, 10th Dist. No.

09AP-1043, 2010-Ohio-3841, ¶ 7. Such motions are directed to the issue of whether "the evidence is insufficient to sustain a conviction." Crim.R. 29(A). As such, there was sufficient evidence to support the convictions and to overrule appellant's Crim.R. 29 motion for acquittal. Therefore, appellant's second assignment of error is overruled.

{¶ 18} As such, each of appellant's assignments of error are overruled.

## IV. STATE'S REQUEST TO MODIFY SENTENCES

{¶ 19} The state notes that the 11 year prison terms for aggravated burglary and rape imposed by the trial court are unlawful. The state also notes that the crimes occurred shortly after the enactment of S.B. No. 2, and the applicable range for first degree felonies at the time of the offenses was 3 to 10 years. The maximum prison term for first degree felonies was not increased to 11 years until the enactment of H.B. No. 86 in 2011. Therefore, the state acknowledges that the 11 year prison terms for the aggravated burglary and rape counts are "void" because they are not authorized by statute. *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, ¶ 8. (Appellee's brief at 4.)

{¶ 20} The state requests that this court modify the sentence to consecutive 10 year prison terms, for a total of 20 years, to be served consecutively to the Michigan and Cuyahoga County sentences. The state claims that this case illustrates perfectly the Supreme Court of Ohio's observation that "[c]orrecting the defect without remanding for resentencing can provide an equitable, economical, and efficient remedy for a void sentence." *Fischer* at ¶ 30. (Appellee's brief at 4-5.) We agree.

{¶ 21} Having found an error of law in appellant's sentencing, we are specifically empowered by both App.R. 12(A)(1)(a) and R.C. 2953.08(G)(2) to "modify" the sentence imposed by the trial court. For the sake of judicial economy, rather than require a new sentencing hearing, we exercise that power and hold that appellant's sentence is hereby modified to reflect consecutive sentences of 10 years each for appellant's convictions for aggravated burglary and rape, resulting in a total sentence of 20 years, to run consecutive to prior convictions in Michigan and Cuyahoga County, Ohio, as stated in the trial court's judgment entry. In all other respects, we affirm the judgment of the trial court.

## V. DISPOSITION

{¶ 22} Appellant's assignments of error are overruled. In addition, the judgment of the trial court is modified to reflect consecutive sentences of 10 years each for appellant's

convictions for aggravated burglary and rape, resulting in a total sentence of 20 years, to run consecutive to prior convictions in Michigan and Cuyahoga County, Ohio, as stated in the trial court's judgment entry. In all other respects, we affirm the judgment of the trial court.

*Judgment affirmed in part*
*and modified in part.*

KLATT and LUPER SCHUSTER, JJ., concur.

————————————